IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE ELLIS THOMAS, | ) |
| Plaintiff, | ) Civil Action No. 11-2461 |
| v. | ) CLASS ACTION |
| VERIFIRST BACKGROUND SCREENING, LLC, et al., | ) |
| Defendants. | ) |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Leslie Ellis Thomas, through undersigned counsel, submits this Sur-Reply in opposition to Verifirst Background Screening, LLC and Trans Union, LLC's (collectively "Defendants") Reply in Further Support of Their Motion to Dismiss Plaintiff's Complaint to respond to several new matters raised by Defendants for the first time in their Reply. These arguments are meritless, but Plaintiff believes it appropriate to briefly address them.

## I. ARGUMENT

In addition to reiterating their misstatements of the facts of the case, Defendants' Reply advances arguments not originally contained in their Motion to Dismiss Plaintiff's Complaint. Those arguments include: (1) reference to a case not previously cited or discussed by Defendants, *Sorrell v. IMS Health, Inc.*, 2011 WL 2472796 (*see* Def.'s Reply at 2-6), and (2) an entirely new standing argument. (*See* Def.'s Reply at 7). Neither argument supports Defendants' Motion.

A. *Sorrell* **is Impertinent**

Defendants argue for the first time that the Supreme Court's recent decision, *Sorrell v. IMS Health, Inc.*, 2011 WL 2472796, strengthens the First Amendment argument asserted in their Motion. It does not. Defendants argue not only that Plaintiff's claims should be dismissed *in toto* because of alleged infringement of the Defendants' First Amendment rights, but also that the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), itself is a *per se* infringement upon Defendants' First Amendment Rights. (*See* Def.'s Reply at 2-6). This overly aggressive and unprecedented position is not remotely supported by *Sorrell* for several reasons, not the least of which is that *Sorrell* does not address the FCRA at all. (*See* Def.'s Reply at 2-6; *see also Sorrell*, 2011 WL 2472796 *5).

First, *Sorrell* addresses a recently enacted (2007) and unchallenged Vermont state law concerned with the regulation of pharmaceutical prescription information, not a federal statute carrying 40 years of judicial interpretation concerned with the sale of consumer reports. *Sorrell*, 2011 WL 2472796 *4-5. Not once in the FCRA's rich and abundant interpretative history, which includes recent Supreme Court precedent[1], has a court ever held that the FCRA violates the First Amendment. Certainly, with such a rich interpretive history, significant amendments in 2004, and sophisticated actors defending against its application, if the FCRA implicated the First Amendment, the Supreme Court or another federal court would have so held by now.

Second, *Sorrell* involved a state law which prohibited the *truthful* transmission of a physician's prescription history to marketers of pharmaceuticals, not a law which seeks to prevent the *inaccurate* compilation and sale of consumer specific reports which may hinder a

---

[1] *See, e.g., Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-68 (2007) (Supreme Court interpreting definitions of "adverse action" and willfulness under the FCRA in applying it to cover insurance companies).

2

consumer's ability to secure employment, as alleged by Plaintiff in this case. (*See* Def.'s Reply at 3; *see also* Plaintiff's Comp. at ¶¶ 2, 3, 28 and 29).

Third, the Supreme Court's decision was largely based upon the Vermont law's failure to properly effectuate its intended purpose. *Sorrell*, 2011 WL 2472796 *16-17. Here, the FCRA's intent to regulate commercial speech is specifically tailored to ensure the "accuracy and fairness of credit reporting"[2] and to prevent consumers such as Plaintiff from becoming "unemployable"[3] based on a consumer reporting agency's failure to appreciate their "grave responsibilities" to the public.

*Sorrell* actually undermines Defendants' argument in reiterating the long-standing principle that commercial speech often falls within the parameters of acceptable content-based

---

[2] 15 U.S.C. § 1681(a): Congressional findings and statement of purpose:

(1) Accuracy and fairness of credit reporting

The Congress makes the following findings:

(a) ...

(2) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(b) Reasonable procedures

It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

[3] *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (emphasis added), cited a statement by Representative Sullivan, a sponsor of the FCRA, during debate on the House floor:

...[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, *make him unemployable* or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home.

restrictions: "[i]t is true that content-based restrictions on protected expression are sometimes permissible, and that principle applies to commercial speech. Indeed the government's legitimate interest in protecting consumers from "commercial harms" explains "why commercial speech can be subject to greater governmental regulation than non commercial speech." *Sorrell*, 2011 WL 2472796 *17, *citing City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 426 (1993). As set forth in his Response Memorandum, Plaintiff has pled commercial harm. (*See* Plaintiff's Resp. Mem. at 6-8).

Finally and also pointed out in Plaintiff's Response Memorandum, the courts that have considered First Amendment challenges to the FCRA have held that it is not implicated by the sale of a consumer report by a consumer reporting agency. *See Trans Union Corp. v. FTC*, 245 F.3d 809 (D.C. Cir. 2001); *see also Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 842 (N.D. Ill. 2008). Defendants' First Amendment argument remains flaccid, and *Sorrell* is an impertinent non-factor.

B. **Defendants' New Standing Argument Fails**

Defendants' second new argument is that the constitutional doctrine of standing compels dismissal of Plaintiff's Complaint. (*See* Def.'s Reply at 7). Citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (2011), Defendants allege that Plaintiff lacks standing to bring his 15 U.S.C. §1681k claim. (*See* Def.'s Reply at 7). Defendants are wrong, and their sudden newfound argument should be rejected like their others without much pause from this Court.

Plaintiff has pleaded the requisite elements of standing in his Complaint: (1) an injury in fact; (2) a causal connection between that injury and the Defendants' violations of the FCRA; and (3) it is likely that this Court will be able to redress the injury. *See Lujan*, 504 U.S. at 560-61. Plaintiff alleges that he was given a start date for employment pursuant to an acceptable background check, and that he did not start working that day because of the Defendants' report

about him. (*See* Plaintiff's Comp. ¶¶ 20-23). Plaintiff also alleges that he received the consumer report at issue later in time than his prospective employer, *i.e.* the notifications were not "contemporaneous." (*See* Plaintiff's Comp. ¶¶ 16, 26-28). Plaintiff also pleads a causal connection between Defendants' violations of the FCRA and that injury in fact, namely that "Defendants' failure to follow" the FCRA "was a substantial factor in the rejection of Plaintiff's employment application." (*See* Plaintiff's Comp. ¶¶ 32 and 34-37). He further alleges that his claims can be redressed under the FCRA by this Court, not only for injunctive relief pertaining to the complained of violations of the FCRA, but also in compensatory damages. (*See* Plaintiff's Comp. ¶¶ 46 and 51).

Defendants' contention that since Plaintiff knew a background check was being performed they have satisfied their notice requirement under the FCRA is nonsensical for three reasons. First, the statute requires that *Defendants* provide *written* notice at the time such public record information is reported to the user of the consumer report. 15 U.S.C. 1681k(a)(1). Some vague *oral* representation by the *potential employer* that a background check was being performed hardly qualifies. (*See* Plaintiff's Comp. ¶ 9). Second, even if Plaintiff was somehow "on notice," he had no idea which one of the thousands of potential background check providers were actually performing his background check. (*See* Plaintiff's Comp. ¶ 10). Surely, the FCRA is not designed to require consumers to write dispute letters to thousands of consumer reporting companies about potentially adverse information. Third, even if Plaintiff was "on notice" and intended to dispute to thousands of consumer reporting agencies, he had no idea what, if any, potentially adverse information was being reported about him, since he does not have a criminal background himself, let alone a sex offense conviction. (*See* Plaintiff's Comp. ¶ 28).

Thus, Defendants' invitation to misinterpret both the law and the facts of this case must be declined. Plaintiff has alleged sufficient facts to show Defendants do not comply with Section 1681k of the FCRA.

## II.   CONCLUSION

For the reasons stated above, as well as the reasons set forth in Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, Defendants' Motion should be denied.

Respectfully submitted,

FRANCIS & MAILMAN, P.C.

By:   /s/ James A. Francis
JAMES A. FRANCIS
ERIN A. NOVAK
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

ROBERT P. COCCO, P.C.
ROBERT P. COCCO
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(215) 351-0200

CONSUMER LITIGATION ASSOCIATES, P.C.
LEONARD A. BENNETT
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
(757) 930-3660

Dated: July 14, 2011

*Attorneys for Plaintiff and the Class*